# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE J. HAAS, | 1:11-cv-00794-SKO |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | (Doc. 1) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## INTRODUCTION

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act. 42 U.S.C. § 1383(c). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.

**FACTUAL BACKGROUND**

Plaintiff was born on April 19, 1989, and has completed the 10th grade. (Administrative Record ("AR") 26-27, 109.) Plaintiff has no previous work history. (AR 14, 159.) On March 18, 2009, Plaintiff filed an application for SSI, alleging disability due to dyslexia and a left-knee problem. (AR 105.)

**A.    Medical Evidence**[1]

On October 11, 2008, Plaintiff underwent a psychological evaluation performed at Sabella Medical Group. (AR 261-66.) Upon testing, Plaintiff was found to have borderline intellectual functioning. (AR 265.) Rosa Colonna, Ph.D., determined that Plaintiff "would be able to understand, remember, and carry out short and simplistic instructions without difficulty." (AR 265.) Dr. Colonna also indicated that Plaintiff presented with a mild inability to understand, remember and carry out detailed instructions, but that he would be able to make simplistic work-related decisions without special supervision. (AR 265.)

On February 25, 2009, Plaintiff underwent a second psychological evaluation by Kimball Hawkins, Ph.D. (AR 267-70.) The testing results yielded scores that were "in the borderline deficient range on non-verbal intellectual measures" and indicated an academic achievement at the elementary level. (AR 269.) Plaintiff was diagnosed with a borderline level of intellectual functioning. Dr. Hawkins recommended that Plaintiff be referred to the Kern Regional Center Clinical Team regarding eligibility so that he could receive training in a transitional program and receive independent living skills training. (AR 270.)

On June 22, 2009, Plaintiff underwent a third psychological evaluation by Mark D. Pierce, Ph.D. (Doc. 281-84.) Dr. Pierce provided the following discussion of Plaintiff's impairment:

> This claimant evidences borderline to deficient range intellectual capacity, with selectively stronger cognitive skills demonstrated overall by testing today. He is a slow but fair responder verbally, against a background of denied affective or behavioral disturbances, either by mother completing Patient History or per the claimant, while he is also a non-spontaneous personality throughout.

---

[1] Plaintiff was not found to have any severe physical impairments, which is not challenged on appeal. Thus, Plaintiff's physical medical history will not be set forth below, and the medical evidence discussed will be limited to Plaintiff's mental impairment.

> By today's performance, he apparently just retains the capacity to complete simple and repetitive vocational skills and to adapt to minimal changes in a work environment. Reasoning capacities are finally judged adequate to this lower level of vocational functioning, despite the fact that the claimant appears to show social skills and other adaptive deficits by report and presentation.
>
> The claimant would have mild to greater difficulty working effectively with others, due to inhibitions of personality as noted today. He can remember and comply with simple one and two part instructions. He is finally concluded able to concentrate just adequately for a regular work schedule for a full workweek.

(AR 285.)

**B.    Vocational Training Records**

In July 2009, Plaintiff began training in a program called the Desert Area Resources & Training ("DART"). (AR 158.) The program offered through DART allowed Plaintiff to be paid sub-minimum wage based on his productivity. (AR 161.) Currently, Plaintiff has been assigned to grounds keeping. (AR 29.) At DART, Plaintiff is provided a job coach to help him complete tasks on the job, special transportation, a work schedule provided by the job coach, assistance with tasks, and a lower quality of work is accepted from Plaintiff to accommodate his mental impairment. (AR 161.) In July 2009, a DART competitive employment evaluation indicated that Plaintiff was not currently capable of competitive employment without support from DART. (AR 163.) The evaluation indicated that Plaintiff had difficulty discerning a situation and making an appropriate decision. (AR 163.) The evaluation also stated that Plaintiff needed help with schedules, assignments, and "follow through." (AR 163.)

On October 30, 2009, an initial progress report was completed by Plaintiff's job coach at DART. (AR 174.) This report indicated that Plaintiff was safe in all aspects of the job, he was learning quickly, but he was easily distracted and would stop working to talk. (AR 174.) A November 30, 2009, report completed by Plaintiff's job coach indicated that Plaintiff was becoming "more safety minded each week" and he was learning "what to do in what order." (AR 173.)

A December 15, 2009, progress report indicated that Plaintiff needed to "stop missing Mondays." (AR 172.) A January 28, 2010, report from the job coach stated that Plaintiff was "making good progress," but he needed to "make it to work on Mondays." (AR 171.) On April 30, 2010, Plaintiff's job coach reported that Plaintiff needed to improve on his ability to arrive at work

on time. (AR 167.) On July 29, 2010, it was reported that Plaintiff did well with safety issues, had done a "very good" job of learning the schedule and the tasks of the job, but still needed improvement in his ability to "arrive [at] work on time." (AR 162.)

On August 6, 2010, a "Subsidized Employee Evaluation" of Plaintiff's work performance was completed. (AR 158-161.) The form was signed by a case manager and indicated that Plaintiff could not do the same job for another employer without accommodation:

> [Plaintiff] has prov[en] himself to be a hard worker but absolutely needs the accommodation we provide. [Plaintiff] is very unsure of himself when it comes to decision making and relies heavily on the direction of his job coach. He seems to have difficulty with cause and effect and how this influences positive decision making.

(AR 160.) The evaluation also stated that the DART program "performs a study twice a year" on Plaintiff to determine his level of work productivity, and that his rate of pay is commensurate with his productivity. (AR 161.) The evaluation stated that Plaintiff "is currently working at 83 percent productivity and is earning $7.23/hr," even though the prevailing wage in the community for grounds work is $8.66 per hour. (AR 161.)

**C.     Administrative Proceedings**

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 50, 60-62, 69-71.) On August 11, 2010, Plaintiff appeared and testified at a hearing conducted by ALJ Jeffery A. Hatfield. (AR 21-44.)

A vocational expert ("VE") testified that Plaintiff's current work in the DART program constitutes an accommodated work environment. (AR 37.) The VE identified several accommodations furnished by DART including a job coach, transportation, and monitoring of tardiness and absenteeism. (AR 37.) The VE testified that Plaintiff had difficulties with tardiness and absenteeism and that he was given leeway within the DART program. The VE also acknowledged that "the pace of work is slower than a competitive rate." (AR 37.) The ALJ asked the VE to consider a hypothetical person who was limited to the following types of job tasks: simple, routine, and repetitive tasks which would permit only occasional decision making and the exercise of judgment and would only involve superficial non-confrontational, non-arbitration and

non-negotiation types of activities, but may involve frequent contact with the public and coworkers. (AR 38.) The VE testified that there was work that would accommodate those limitations that a hypothetical person could perform such as laundry laborer, DOT 361.685-018, hand packager, DOT 920.587-018, and cleaner, DOT 919.687-014.

Plaintiff's representative questioned the VE regarding the DART accommodations and how these accommodations would affect Plaintiff's ability to perform the jobs identified by the VE in response to the ALJ's hypothetical. (AR 42-43.) Plaintiff's representative asked the VE whether, based on the DART case manager's August 6, 2010, report, Plaintiff would be able to perform the jobs identified by the VE. (AR 42.) The VE indicated that if Plaintiff needed the accommodations offered by DART, as the DART case manager stated in her August 6, 2010, report, then Plaintiff would not be able to perform the jobs identified by the VE. (AR 42.)

On August 20, 2010, the ALJ issued a decision finding that Plaintiff is not disabled, as defined by the Social Security Act. (AR 11-17.) Specifically, the ALJ found that Plaintiff (1) has not engaged in substantial gainful activity since March 18, 2009, the date of application; (2) has a severe impairment of borderline intellectual functioning; (3) does not have an impairment or combination of impairments that meets or equals a listed impairment set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) has the RFC to perform a full range of medium work; (6) has no past relevant work; and (7) there are a significant number of jobs in the national economy that the claimant can perform. (AR 11-17.)

Plaintiff sought review of this decision before the Appeals Council. (AR 6-7.) The Appeals Council denied review on March 30, 2011. (AR 1-5.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

On May 16, 2011, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff contends that the ALJ erred in failing to discuss the DART reports and determining that Plaintiff could perform the jobs identified by the VE.

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a

combination of impairments significantly limiting her from performing basic work activities. *Id.* § 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* § 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient RFC despite the impairment or various limitations to perform her past work.[2] *Id.* § 416.920(f). If not, in the Fifth Step, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* § 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920.

## **DISCUSSION**

**A.     The Parties' Arguments**

Plaintiff asserts that the August 2010 "Subsidized Employee Evaluation" report provided by DART ("DART report") explains the many accommodations Plaintiff receives while performing his work, and it indicates that Plaintiff's workplace activities are significantly deficient in terms of production and pace. (Doc. 12, 5:3-7.) Moreover, when questioned at the hearing about the August 2010 DART report, the VE testified that a person who was vocationally limited as described in the DART report would not be able to engage in competitive employment. (Doc. 12, 5:14-19.) Plaintiff argues that the ALJ failed to address the DART report in his decision and did not acknowledge the VE's testimony in this regard, which is lay evidence of Plaintiff's abilities and cannot be disregarded without comment. (Doc. 12, 5:20-6:1.) Due to the ALJ's failure to address the DART evaluation coupled with the VE's testimony, Plaintiff asserts that the record stands uncontradicted that Plaintiff is disabled and the matter should be remanded for an award benefits. (Doc. 12, 7:7-18.)

---

[2] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Defendant argues that the ALJ was not required to consider the DART report because it was largely inconclusive and ambiguous and was not, therefore, significantly probative of Plaintiff's actual vocational abilities and opportunities. (Doc. 13, 4:19-5:6.) Defendant also contends that the VE indicated that, although the DART report stated that Plaintiff's productive was 83 percent of a normal worker, it was not clear what the 83 percent productivity figure actually reflected and it was not clear if that figure was recently determined by DART. (Doc. 13, 4:23-5:1.)

Defendant asserts that, even assuming the report is probative, it was accounted for in the ALJ's decision. (Doc. 13, 5:7-12.) In support of this argument, Defendant notes that the DART report mentioned Plaintiff's difficulty with decision-making and his need for assistance with starting and repairing equipment, but these limitations were accounted for in the ALJ's RFC which limited Plaintiff to simple, repetitive work in a low-stress environment with only occasional decision making, changes in work setting, and exercise of judgment.   (Doc. 13, 5:7-12.)

Finally, Defendant asserts that even if the report should have been expressly addressed by the ALJ, the VE's testimony demonstrates that such a failure was harmless because the report was ambiguous as to Plaintiff's ability to perform competitive work. (Doc. 13, 5:13-17.)

**B.     Analysis**

At the hearing, the ALJ specifically discussed the DART report for purposes of determining whether Plaintiff's work in the DART program was substantially gainful work activity. (AR 37.) The VE testified that the DART program was an accommodated work environment because it included the following:[3]

> There's both a job, there's a job coach but there's an, and that's on the job.  But there's a lot of other assistance too, assistance [sic].  Transportation is provided if needed, monitoring if the person's, there's been some problems with tardiness and a lot of help to assist with that problem as well as a little leeway on the tardiness on absenteeism both.  There's some problems with missing Mondays.  So the, and the pace of work is slower than a competitive rate and that is also accommodated.

(AR 37.)  The ALJ ruled that, based on these accommodations, the work did not constitute "substantial gainful activity" ("SGA").  Plaintiff's representative at the hearing cross examined the

---

[3] This section is a transcription of the live testimony offered by the VE at the hearing and is set forth in this order as it is transcribed, despite what appear to be typographical or grammatical errors in the text.

8

VE regarding the work that the VE stated a hypothetical person with Plaintiff's limitations could still perform. The representative asked the VE whether, given the four areas of accommodation identified, Plaintiff would still be able to perform the work identified by the VE. (AR 39.) To clarify the question, the ALJ asked the VE to restate the areas of accommodation, which the VE identified as tardiness, absenteeism, transportation, and pace of work. (AR 40.) Additionally, the VE noted that there was also a job coach provided as an accommodation. (AR 40.) The following exchanged occurred between the VE and Plaintiff's representative:

> Q [Rep]: So if the person needed this kind of accommodation in the work you identified[,] would he be able to maintain persistence and pace required?
>
> A [VE]: Perhaps not but I do have to note there is improvement as you read through [the DART records] . . . The tardiness, the absenteeism are diminishing. Transportation seemed to have been somewhat resolved. Probably the pace, and I, you know what, I did just read through that and I'm not sure when they made that assessment that, I'd have to look at it again, when they made the assessment that the pace was about 86 percent of normal . . . of what would be considered competitive employment.
>
> ALJ: Do you need to review the exhibit again?
>
> VE: So I might need to see the date on that and —
>
> ALJ: It's right here.
>
> VE: Yeah, it's right there, right. That's right.
>
> REP: Because one of the things they said, "At times it was necessary to have more experienced workers complete tasks to aid in accomplishing the work in a timely manner."
>
> VE: Where did I see? Because I know, for example, in '09 there was definitely more comments, "He's easily distracted by others," "stopped work to talk," et cetera. So that was definitely more of a problem.
>
> Q [Rep]: So they're saying that he's currently working at 83 percent productively? So would that mean that he's roughly 20 percent unproductive?
>
> A [VE]: You know, that was based, that's how they determined his wages. Let me find that. Well, you know perhaps of more significance, on 8/6/10, so that's in August of this year it says here, "Kyle's proved himself a hard worker but absolutely needs [the] accommodations we provide. Very unsure of himself when it comes to decision making and relies heavily on the direction of his job coach. He seems to have

| | | |
|---|---|---|
| 1 | | difficulty with cause and effect and how this influences positive decision making." |
| 2 | Q [Rep]: | So that would mean that, he could, if he were to work at any of these three jobs he would need this kind of accommodation? |
| 3 | | |
| 4 | A [VE]: | Based on, I mean I can't make that determination – |
| 5 | Q [Rep]: | Well if you were to take – |
| 6 | A [VE]: | – but based on this case manager's assessment – |
| 7 | Q [Rep]: | Yes. |
| 8 | A [VE]: | – yes. |
| 9 | Q [Rep]: | So if you take that, what you just read – |
| 10 | A [VE]: | Right. |
| 11 | Q [Rep]: | –and apply it to these three jobs identified – |
| 12 | A [VE]: | Right. |
| 13 | Q [Rep] | – that would – |
| 14 | A [VE]: | I would say based on this assessment, yes. |
| 15 | Q [Rep]: | Okay.  So you're saying that he would not be able to work at those jobs? |
| 16 | | |
| 17 | A [VE]: | That's correct. |
| 18 | Q [Rep]: | Anything, any other jobs? |
| 19 | A [VE]: | Okay, and actually, you know what, those wages were based on, that is based on a current assessment. |
| 20 | Q [Rep]: | Mm-hm |
| 21 | A [VE]: | And so that, it is saying 83 percent productivity, yeah.  So, no, that would not be competitive.  I mean I don't think you have to have 100 percent productivity, but 83 percent is pretty close to a 20 percent less than the minimum acceptable, that's not going to be competitive. |
| 22 | | |
| 23 | (AR 41-43.) | |

The DART report stated the case manager's opinion that Plaintiff could not do the same job, without any accommodation, for another employer. (AR 160.) The case manager explained that

> Kyle has prove[n] himself a hard worker but absolutely needs the accommodations we provide.  Kyle is very unsure of himself when it comes to decision making and relies heavily on the direction of is job coach.  He seems to have difficulty with cause and effect and how this influences positive decision making.

(AR 160.)

No aspect of this report was expressly discussed by the ALJ in his decision. Defendant argues that the portion of the DART report that indicated Plaintiff's productivity was 83 percent was the result of testing that took place only twice a year and was calculated for the purpose of assigning wages, not assessing Plaintiff's abilities. As a result, Defendant contends that the DART report has no bearing on Plaintiff's limitations. (Doc. 13, 4:20-5:6.) During the hearing, however, the VE clarified that the productivity number offered in the DART report was "based on a current assessment." (AR 43.) Additionally, Plaintiff's on-the-job productivity was not the only discussion of Plaintiff's abilities contained in the DART report. As the VE pointed out, it is "perhaps of more significance" that the DART report expressly stated that Plaintiff could not perform the same work for another employer without the accommodations offered by DART. (*See* AR 42, 160.) A statement by an employer or supervisor with personal knowledge of Plaintiff's at-work abilities and limitations bears directly on the question of Plaintiff's RFC. For example, while Dr. Colonna opined that Plaintiff would be able to make simplistic work-related decisions without special supervision (*see* AR 265), the case manager's observations of Plaintiff in the DART report contradict Dr. Colonna's opinion of Plaintiff's abilities, particularly to the extent that the DART report indicated Plaintiff relies heavily on his job coach to complete tasks and make decisions (*see* AR 160). The DART report is significant probative evidence that should have been discussed by the ALJ given the VE's testimony that, if Plaintiff requires the accommodations as indicated in the DART report or has an 83 percent productivity rate as set forth in the DART report, Plaintiff cannot perform any other competitive work.

Defendant also argues that anything offered in the DART report was incorporated into the ALJ's RFC that limited Plaintiff to simple, repetitive work in a low stress environment permitting only occasional decision making, changes in work setting, and exercise of judgment. (Doc. 13,5:7-13.) However, the DART report refutes that Plaintiff could do the kind of work he is doing at DART for a different employer without the accommodations offered at DART, which includes the provision of a job coach. Again, the Court finds the opinion and observations of a person with direct personal

1 knowledge of Plaintiff's abilities in a work setting to be probative as to Plaintiff's RFC – specifically
2 his ability to complete tasks and make work related decisions without special supervision.

3       Defendant's argument that the DART report is vague and ambiguous and any error by the
4 ALJ in failing to discuss it was harmless, is not persuasive.  The DART report clearly states that
5 Plaintiff requires the accommodations offered by DART and that he cannot perform the same work
6 for an employer who does not provide those accommodations.  (AR 160.)  This is not a vague or
7 ambiguous statement.  Moreover, the VE indicated that, if Plaintiff's productivity was 83 percent of
8 normal as indicated by the DART report, Plaintiff would not be able to perform any competitive
9 work.  This is not vague or ambiguous testimony either: according to the VE, if the DART report
10 is credited, then Plaintiff cannot perform any work. In sum, the DART report is significant probative
11 evidence that should have been addressed by the ALJ.  *See Vincent on Behalf of Vincent v. Heckler*,
12 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ need not discuss all of the evidence presently, but must
13 explain why significant probative evidence has been rejected).  The Court cannot conclude that the
14 ALJ's failure to discuss the DART report is harmless.

15 **C.**    **Choice of Remedy**

16       Plaintiff asserts that the Court should remand the case to the ALJ for an award of benefits.
17 Defendant asserts that, to the extent the Court determines remand is necessary, an award of benefits
18 is not appropriate.

19       "The court shall have power to enter, upon the pleadings and transcript of the record, a
20 judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security,
21 with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  In Social Security cases,
22 the decision to remand to the Commissioner for further proceedings or simply to award benefits is
23 within the discretion of the court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  "If
24 additional proceedings can remedy defects in the original administrative proceedings, a social
25 security case should be remanded.  Where, however, a rehearing would simply delay receipt of
26 benefits, reversal [and an award of benefits] is appropriate."  *Id.* (alteration in original) (internal
27 quotation marks omitted).  The Court finds that remand for further proceedings is appropriate so that
28 the ALJ may consider the DART report – the Court will not assess the weight of the DART report

and how it impacts upon Plaintiff's RFC in the first instance. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (the ALJ is responsible for resolving conflicts in the evidence); *Johnson v. Heckler*, 741 F.2d 948, 952-53 (7th Cir. 1984) (reviewing court may not usurp the administrative law judge's fact-finding function).

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, REVERSED and the case REMANDED to the ALJ for further proceedings consistent with this order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Kyle J. Haas and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

**Dated:   June 5, 2012**                     /s/ Sheila K. Oberto
                                        UNITED STATES MAGISTRATE JUDGE